INDEPENDENT SCHOOL DISTRICT OF SWITZER, Appellant, v. W. W. GWINN, et al., Appellees.

SCHOOLS AND SCHOOL DISTRICTS: School Boards—Special
1  Meeting—Notice—Sufficiency. A notice of the time and place of a special meeting of a school board, communicated by the president of the board, by telephone, to the wife of a member, and by her communicated to her husband, is sufficient, under Sec. 2757, Code Supp., 1913, especially when the member was, at the time, sick and wholly unable to attend an meeting.

SCHOOLS AND SCHOOL DISTRICTS: Formation of District—Con-
2  solidated District—Petition—Approval by County Superintendent. A petition for a consolidated school district, *embracing land wholly within one county,* need only be approved by the county superintendent of such county, even though part of the territory proposed to be appropriated by the consolidated district is taken from another district, which, for all school purposes, is under the jurisdiction of the county superintendent of a different county.

SCHOOLS AND SCHOOL DISTRICTS: Formation of Districts—
Petition for Consolidation—Approval—Subsequent Action by
Other Districts—Effect. The jurisdiction of a school board,
acquired by the filing with it of a petition for the organization
of a consolidated school district, duly determined, by the calling of
an election thereon, to be legally sufficient, is not defeated by the
subsequent joint action of the boards of two adjoining districts, in
transferring prior to said election, territory affected by said pro-
posed consolidated district:

PRINCIPLE APPLIED: The Independent District of Switzer
was first organized, apparently, with 2¼ sections of land. Later,
the Independent District of Hartford was established, and took
from the Switzer district a certain half section of land, thereby
leaving the Switzer district with only 1¾ sections of land. Still
later, the Independent District of Swan was organized, and took
said half section from the Hartford district. At a still later date,
a petition was filed with the Hartford board, praying for the
establishment of The *Consolidated* District of Hartford, to be
composed of certain territory, included in which was this old half
section in controversy. The petition was duly approved by the
county superintendent and was legally sufficient, and an election
was called. After the election was called, but before the election
occurred, the Switzer and Swan boards, by joint action, trans-
ferred said half section of land to the Switzer district, thereby,
apparently, increasing the Switzer territory to 2¼ sections. The
said election came on, and the proposal to consolidate carried.
Plaintiff, the Switzer district, claimed that the said consolida-
tion left it with less than four sections of land, in violation of
Sec. 2794-a, Par. a, Code Supp., 1913. *Held*, the joint action of
the Switzer and Swan boards did not oust the jurisdiction of the
Hartford board to proceed with and complete the organization
of the consolidated district.

*Appeal from Warren District Court.*—J. H. APPLEGATE,
Judge.

TUESDAY, OCTOBER 24, 1916.

ACTION to declare the organization of a consolidated inde-
pendent school district illegal, and to enjoin its officers from
exercising any jurisdiction over certain territory alleged to
belong to the plaintiff district and incorporated in the con-
solidated independent district. The court below dismissed
plaintiff's petition.—*Affirmed.*

*W. M. Wilson* and *F. P. Henderson*, for appellant.

*Berry & Watson,* for appellees.

GAYNOR, J.—This is an action brought by the Independent School District of Switzer for the purpose of determining the validity of the organization of the Consolidated Independent School District of Hartford, and the rights of the defendants herein to act as directors and officers of said district, and, further, to determine the right of defendants and said school district to exercise authority over the SE ¼ of Section 33, and the SW ¼ of Section 34, Township 77, Range 22 west of the 5th P. M.

It is claimed that the land above described belongs to and is a part of the plaintiff district; that defendants have no authority or right to control the same. The prayer of plaintiff's petition was that a decree be entered, adjudging that the Consolidated Independent School District of Hartford has never been legally organized, and does not exist in law or fact; that the territory above described be decreed to belong to the plaintiff district for school purposes; that a temporary injunction be issued, restraining said consolidated district and the defendants from levying or collecting taxes for school purposes from said territory, and from exercising any jurisdiction over said territory for school purposes.

The facts are that the plaintiff is an independent school district, and claims to have within its borders, as a school district, 2¼ sections of land, including the half section in controversy. This half section was a part of plaintiff's territory until about the month of April, 1912. About this time, the Independent School District of Hartford, Richland Township, Warren County, was organized. When organized, it included within its territory the town of Hartford, considerable surrounding territory, and the land in controversy. This land was taken from the plaintiff district, leaving the plaintiff district, after the organization of the Independent District of Hartford, with but 1¾ sections of land. This organ-

ization of the Independent School District of Hartford was made under the provisions of Section 2794 of the Code, 1897. In the meantime, there was organized the Independent School District of Swan, in Marion County, Iowa, which included within its boundaries the town of Swan and surrounding territory, and a part of the territory formerly within the Independent School District of Hartford, and, also, the half section now in controversy, leaving plaintiff district then, after the organization of the independent districts of Swan and Hartford, with but 1¾ sections of land. The Independent School District of Swan had within its boundaries land in Marion County, and also the half section of land in controversy, and other land situated in Warren County; but said district of Swan was, for school purposes, in Marion County, and was under the jurisdiction of the county superintendent of schools of Marion County for all school purposes. This was the condition of these several districts at the time of the attempted organization of a consolidated independent school district of Hartford. On the 6th day of June, 1914, a petition was filed with the secretary of the Independent School District of Hartford, under the provisions of Section 2794-a of the Supplement to the Code, 1913, which, so far as material to this controversy, is as follows:

"When a petition describing the boundaries of contiguous territory containing not less than sixteen sections within one or more counties is signed by one third of the electors residing on such territory, and approved by the county superintendent, if of one county, and the superintendent of each if of more than one county, and by the state superintendent of public instruction if the county superintendents do not agree, and filed with the board of the school corporation in which the portion of the proposed district having the largest number of voters is situated, requesting the establishment of a consolidated independent district, it shall be the duty of said board, within ten days, to call an election in the proposed consolidated district, for which they shall give the same notices

as are required in Section 2746 of the Code, and 2750 of the Supplement to the Code, 1907, at which election all voters residing in the proposed consolidated district shall be entitled to vote by ballot for or against such separate organization.''

This petition was signed by more than one third of the electors residing in such territory, and was approved by the county superintendent of schools of Warren County. Upon the filing and approval of said petition, the president of said board called a special meeting of the board for June 8, 1914, on which date the board met, all the members of the board being present except one Halderman. At this meeting an election was called for June 25, 1914. On this date the election was held, and the requisite number of votes was cast in favor of the consolidation of said territory, described in said petition, into a consolidated independent district. It is admitted that all the provisions of the section herein set out were complied with, except as noted hereafter.

It appears that the territory proposed to be consolidated contained the requisite number of sections; that there was included in the requisite number of sections, and as a part of said new district, the SE ¼ of Section 33 and the SW ¼ of Section 34, now claimed by the plaintiff. All the territory included in this new Consolidated Independent District of Hartford was in Warren County. The lands in dispute in Sections 33 and 34 were also in Warren County. This disputed territory was a part of the school district of Swan, at the time the petition was filed, at the time it was approved by the county superintendent of Warren County, at the time the board met on June 8th, and up to the 22d day of June, 1914. On this day, the boards of directors of the Independent School District of Switzer and the Independent School District of Swan met, and, by concurrent action, the half section of land in controversy in Sections 33 and 34 was transferred and conveyed from the Swan district to the Switzer district, thus making the territory of the Switzer district contain 2¼ sections. The action of the consolidated independent school

district in appropriating this half section in 33 and 34 left the plaintiff district Switzer with the same quantity of land it had at the time the petition was filed and acted upon. Or, in other words, the concurrent action of the Swan and Switzer districts, in transferring to the Switzer district the land in controversy, gave to the Switzer district half a section more than it had at the time the petition in controversy was filed and acted upon.

It is claimed that the action of the Swan and Switzer districts, in transferring this half section to the plaintiff district, gave to the Switzer district $2\frac{1}{4}$ sections; that the action of the Consolidated Independent District of Hartford, in taking this half section, reduced the Switzer district, in violation of the statute. The portion of the statute relied upon is found in Section 2794-a, Code Supp., 1913, and reads as follows:

"No school corporation from which territory is taken to form such a consolidated independent corporation shall, after the change, contain less than four government sections."

Upon the facts above disclosed, the district court dismissed plaintiff's petition. From this, plaintiff appeals.

The case is triable de novo here. The facts, however, are not in dispute.

The plaintiff complains of the action of the district court, and says, first, the special meeting of the Independent District of Hartford, held on June 8th, was illegally organized to

1. SCHOOLS AND SCHOOL DISTRICTS: school boards: special meeting: notice: sufficiency.

transact business. This claim is predicated on the thought that not all the members of the board were present at this special meeting. One of the members of the board was not present, to wit, one Halderman, and it is claimed that no notice was served upon him of said meeting. The plaintiff relies upon Section 2757, Code Supp., 1913, which reads:

"Such special meetings may be held as may be determined by the board, or called by the president, or by the secretary upon the written request of a majority of the members of the board, upon notice specifying the time and place, delivered

to each member in person, but attendance shall be a waiver of notice.''

In *Barclay v. School Township*, 157 Iowa 181, this court, construing this section, said:

''The personal delivery of some form of a notice is required. . . . On account of the failure to give proper notice to Anderson (one of the board of directors), the special meeting of the board was not lawfully called, and its action . . . was therefore invalid.''

The statute expressly requires that some notice be delivered to each member in person.

J. F. Brown, president of the Hartford school board, testified that, when the petition for the consolidated district was filed, he called the members of the board together on June 8th. That was at a special meeting. ''I notified them by phone. My recollection is that Mr. Halderman was sick, and was not able to answer the phone, and his wife answered the phone when I called there.''

Halderman testifies that he was sick from the 30th of May for probably two weeks thereafter, and not able to leave his home at all; that he was sick in bed most of the time, and was not able to go to the meeting at Hartford on June 8th.

His wife testified that she remembered having the conversation with Mr. Brown over the phone in June. Mr. Brown told her that there was going to be a school meeting, and ''wanted to know if I thought my husband would be able to attend, and I told him he would not be. He was confined at the house at the time, and not attending to any business.'' She says it seems to her that the board was to meet on the day on which Mr. Brown called her over the phone; that he called her in the morning, and that the board was to meet that night. She says, however, that she does not remember that Mr. Brown told her the time when the meeting would convene, and that she does not remember where Mr. Brown said the meeting would be. She was asked this question:

''Did you tell Mr. Halderman that Mr. Brown said that

the meeting would be in Hartford in the schoolhouse at 8 o'clock? A. I don't know whether I did or not, because I don't remember, but I told Mr. Halderman whatever Mr. Brown told me. I don't remember anything, only that he said there was going to be a school meeting. Mr. Brown called sometime in the forenoon, I am positive of that. I don't know that I just told Mr. Halderman at the time. I don't think I stopped to tell him just then. I knew he was not able to go. I told him afterwards. I remember of telling him, because he said I done right, because he was not able to attend the school business, let alone his own, and he said he was going to drop out of the school business as soon as the time came when he could.''

Halderman lived only 2½ miles from Hartford. The statute does not fix the length of notice, nor the character of notice, nor how it shall be delivered. The evidence is not very full touching the delivery of this notice to Halderman. The record discloses that, if it had been delivered at any time within two weeks prior to the 8th, he could not have been present. We think there was sufficient evidence of the receipt of notice over the telephone.

This court, in *Gallagher v. School Township,* 173 Iowa 610, construed this statute touching the character of notice required, and said:

''All members, except F. M. Sexton, attended, and he had notice by telephone in ample time to enable him to attend, and he failed to be there, not owing to the kind of notice—i. e., oral, over the phone—but for that he was working on the road and reached home, as he testified, too late to attend. The sufficiency of this notice is challenged, it being contended that Section 2757 of the Code Supplement, providing that the president may call a meeting of the board of directors 'upon notice specifying the time and place, delivered to each member,' exacts written notice. The mere fact that it must be delivered does not require this construction, for notice by word of mouth may be delivered quite as effectually as one in writ-

ing.  What this exacts is that it actually reach the several members, so that each shall be informed of the time and place of meeting.  .  .  .  For this purpose, oral notice would be as effective as written, and there is nothing in the context indicating that one was intended rather than the other.''

We think this case disposes of plaintiff's contention on this point.  The court below, in disposing of this question, said:

''In this case, under the record, there can be no serious doubt that Halderman had actual notice or information or knowledge of the time and place of the special meeting, prior to the time of the meeting, the only question being as to the character of the notice, and the manner of its delivery.''

And the court held that the character of the notice and the manner of its delivery made a sufficient compliance with the statute.  In this holding of the court, we concur.

The next question relied upon by appellant involves the construction of that portion of Section 2794-a of the Supplement to the Code which provides:

2. SCHOOLS AND SCHOOL DISTRICTS: formation of district: consolidated district: petition: approval by county superintendent.

''When a petition describing the boundaries of contiguous territory containing not less than sixteen sections within one or more counties is signed by one third of the electors residing on such territory, and approved by the county superintendent, if of one county, and the superintendent of each if of more than one county.''

It appears from the statement of facts that all of the territory included in this Consolidated Independent District of Hartford is in the county of Warren, and that the petition was approved by the county superintendent of schools of Warren County.  This would seem to be an answer to plaintiff's contention.  The plaintiff, however, claims that, as this land in Sections 33 and 34 was, at the time that the petition was filed, a part of the Independent District of Swan, and the Independent District of Swan included lands not only in Warren, but also in Marion County, that it was necessary,

before these lands could be taken and incorporated in this new district, that the petition should be approved by the county superintendents of both counties. It seems that the territory included in the Independent District of Swan was situated in both Warren and Marion Counties, but the land taken from the Independent District of Swan and incorporated in the new district was all in Warren County. Therefore, inasmuch as all the territory proposed to be included and included in the consolidated district was in Warren County, it would follow that, under the statute, the approval need only be made by the superintendent of schools of Warren County. The statute provides that, if the territory included within the proposed district is in one county, the approval of the county superintendent of the county in which the territory is located is all that is required. This was done, and this was sufficient, and the court so held below, and we approve its holding.

It is next contended that, before the final consummation of all the acts necessary to complete the organization of the consolidated district, the Independent District of Swan trans-

3. SCHOOLS AND SCHOOL DISTRICTS: formation of districts: petition for consolidation: approval: subsequent action by other districts: effect.

ferred its land in Sections 33 and 34 to the plaintiff, and that the effect of the consolidation was to take from the plaintiff this land so transferred, and thereby leave it with less than the statutory territory. If this half section in 33 and 34 were a part of the plaintiff district at the time the petition was filed, and at the time the jurisdiction over the territory was acquired, then there might be something in plaintiff's contention, and we might be required to hold that the statute did not authorize the taking of this territory from the plaintiff for the purpose of incorporating it into the new district, leaving the plaintiff district with but 1¾ sections. But it will be noticed that the petition had been filed before this joint meeting of the Switzer and Swan boards. The petition had been filed, approved by the county superintendent, and an election called for the 25th of June. Upon this point, it is contended that, upon the final

organization of the consolidated district, the plaintiff district was left with less than the statutory number of sections. At the time the petition was filed and approved by the county superintendent, at the time the board met in special session and called the election, and up to the 22d day of June, the plaintiff had no more territory within its district than it had after the consummation or formation of the Consolidated Independent District of Hartford. The territory which it now says was wrongfully taken from it, it did not have any right to or jurisdiction over, until after this territory had been included in the proposed new district, and after the petition had been filed and approved, as aforesaid. When the petition was filed with the secretary of the Independent District of Hartford, it was the duty of the board and county superintendent to determine: First, whether it contains the signatures of at least one third of the legal voters residing in the territory of the proposed district; second, whether it is approved by the county superintendent; third, whether the territory of the proposed independent district comprises not less than sixteen government sections of land; fourth, whether the remaining territory of any corporation from which the territory is taken is contiguous or continuous; fifth, whether, as the result of the change, any corporation is reduced below four government sections. If the first four of these questions are answered in the affirmative, and the fifth in the negative, the board must proceed, within ten days, to call an election as prescribed by law. These questions must all have been considered and determined by the board and the county superintendent before the election was called. At that time, the land in question was not a part of the plaintiff district, and did not become a part of the plaintiff district, if it ever did, until within three days before the election was held. We are inclined to hold that the action of the joint boards in transferring this territory to the plaintiff district did not oust the proposed consolidated district of its jurisdiction to proceed to the final consummation of the consolidated district, and

include the territory in question within its boundaries. As said by the trial court, in disposing of this question:

"If such action can defeat the formation of a consolidated independent district, designing adjoining school boards could prevent the formation of any consolidated independent district."

At the time the petition was filed and acted upon by the county superintendent and the board, at the time the special meeting was called, and up to within three days of the election, the territory in question was a part of the Swan independent district; was no part of plaintiff district. It was taken from the Swan district. The Swan district is not complaining. We think the plaintiff has no just ground of complaint, and the record discloses that it is now left with all the territory it had at the time this consolidated independent district was proposed, the petition circulated, filed and acted upon by the county superintendent and the school board. We think plaintiff is not in a position to complain on this point. As throwing some light upon these questions, see *School District Twp. v. Independent District,* 149 Iowa 480; *Wallace v. Independent School District,* 150 Iowa 711; *Gallagher v. School District,* supra.

Other questions are urged, but we do not deem them sufficiently supported in the record to justify a discussion of them here.

Upon the whole record, we think the district court was right, and its action is—*Affirmed.*

Evans, C. J., Ladd and Salinger, JJ., concur.